You know the rules, the time, but we don't necessarily follow it. If there's a lot of questions, we let you go. Not forever, but we give you some leeway. So with that, you may proceed. Good morning. May it please the Court. Good morning, Mr. Peck. My name is Kerry Peck. I am counsel for the Plaintiff Appellant Lyle Spencer, Jr. This morning, we appear before Your Honors seeking a reversal of the Circuit Court's order granting summary judgment in favor of Trustee Joan Di Cola and seeking reversal of the Court's interpretation of the settlor's intent. Fundamentally, Your Honors, the issue before the Court this morning is ascertaining the settlor's intent as accurately expressed in the trust agreement before the bar. It's the plaintiff's position that the settlor clearly intended to provide the beneficiaries with a safety valve and an oversight check on the individual trustee. Let's take a look at the settlor's intent as expressed in the trust agreement. The intent is not presumed, but rather expressed in the document in its entirety, and it must be read as a whole document. It can't be piecemealed or parsed out as the trustee has suggested in the lower court. If we read the trust in its provisions as a whole and we give the words their plain and ordinary meaning, we believe that the result will justify a reversal in this case and support the plaintiff's position. What is it about the oversight language from the trust that you felt the trustee had mishandled or violated in some way? Well, I think if you take a look at Article 8E and you take a look at the last sentence, but with particularity the last clause, the last sentence of Article 8E, which is stated in its entirety in our brief early on, I believe on page 4, relates to, and I'll just read it out loud for a moment, the trustee's power to appoint and remove substitute trustees may be exercised in their discretion. So the trustee is given a certain amount of discretion. But the focus of our argument this morning is, and the trustee shall exercise, shall be exercised, if directed in writing by a majority in interest of the beneficiaries of the trust. So the trustee's power shall be exercised if directed in writing by a majority in interest of the beneficiaries of the trust. Okay, fair enough. When you used the word oversight, I thought you were implying or leading us to some suggestion that perhaps the trustee had not performed her job appropriately. And that seemed to be the way you were going early on in this case. Talk to us about what happened that caused you to, as your colleague would suggest, change course on the removal for cause. Well, I think that what caused us to change course is that the document authorizes the change. Obviously, there is considerable hostility and disagreement between the individual trustee who resides in Boston, our client, and his children. In essence, as you may be aware, this trust was created by the plaintiff's father for the benefit of the plaintiff and his children. So an issue, really, what brought this case to a head was the trustee's refusal to provide disbursements for what we believe to be educational purposes. The trustee and her counsel categorized it considerably differently. And so we believe that rather than... When you started, it was, let's get her out of there for cause. And then after a couple of rulings, it seemed like you changed course. So in light of the fact that you changed course, and you're obviously entitled to do that, of what interest to us is the oversight powers that the beneficiaries supposedly have over the trustee? Well, I think that the set law specifically created this last clause in Article 8E, which authorizes the beneficiaries to direct the trustee to appoint a substitute trustee. In the case before the court this morning, all the beneficiaries have unanimously directed the trustee to comply with the mandatory duties that she must perform. Okay. How would you argue against what your colleague is talking about as to the roles of a substitute trustee? She would have us believe that a substitute is sort of a designated hitter, comes in and does something for a defined period of time, a transaction, or maybe somebody's infirm for whatever reason. How would you attempt to persuade us differently? Well, I would attempt to persuade you differently by drawing an analogy to our daily involvement in the legal process. When we substitute a judge, when we take an SOJ on a judge, that judge is gone. Okay? When we substitute counsel and I come in as subsequent counsel, counsel withdraws, I come in. When we substitute in baseball, okay, a pinch hitter or a new pitcher, that person is gone. A substitute teacher, I agree, is a short-term period and it's a great question. Is it too late for us to be substituted out? But I think what's important to know about the arguments that my colleague makes is that she suggests that a substitute is both for a time limitation and suggests in the same argument it's for a geographic limitation. Other than Peck on the law or Lischer on the law, can you direct us to some, you know, trust treatise or a trust case that gets down to the sort of picayune detail that we're talking about on the issue of what a substitute trustee does? Not that Peck on the law would not be a value resource for us. We were ready for that one. I think that the answer is we need to focus on what the plain, ordinary meaning of the document is. And I think, again, we need to read it in its entirety. You asked specifically about the substitute and, again, my colleague suggests that a substitute would apply for a limited time period. She suggests a maternity leave or outside the jurisdiction presumably of Illinois. There's a specific article, there's a specific article in this document, this trust document, Article 9, that relates to the jurisdictional appointment of a limited trustee. So the notion that we are asking that the trustee or the notion that the court should adopt a limited trustee for substitution, I would suggest is refuted directly by the contents of the document. So, again, if you take a complete reading of the instrument and conclude that there really is no surplusage or nothing should be rendered insignificant, and you take a look at Article 8E, and, of course, if the corporate trustee is a safeguard for the trust beneficiaries and the assets and serves as a check and balance on the individual trustee, we're not asking anything but that a corporate fiduciary, in keeping it in line with the terms of the document, be appointed here. And under the... I'm sorry, go ahead. Please. I was wondering what your response is to the argument raised by your colleague that the earlier order of the court really extinguished for all times the existence of a corporate trustee. Okay. I think it's a significant issue, but I think that if you take a look at the order in and of itself, and we're talking about the 1982 order, what that order says is that the appointment of a corporate trustee is no longer necessary. But I think we need to take a look at the context of that case. The context of that case was Harris Bank and Trust came in and said, we want to resign. Why? Don't know. You know, that was 1982. I don't know the answer, and I don't think anybody in the courtroom today was involved in the case in 1982. No, but we do have the, you know, certain records from it that would indicate there was some kind of a dispute about requests for disbursement. Right. Okay. I think that the order was entered by agreement of the parties to resign. There was no conclusion in the context of that order that the court finds that no corporate trustee is necessary any longer or that a corporate trustee could never be appointed. Again, we go back to the intent of the testator. But when you vacate, you remove or allow the withdrawal of the corporate trustee, it's apparent to all that there is a vacancy and that there is no request, nor is there an attempt by the court to fill that vacancy. They just leave the void. So the question is, does that or does that not suggest that the import of the order was to say this provision has been removed, it's been reformed, it no longer exists, it's no longer necessary. Or does it become that by the fact that so many years passed? Well, I think, again, we need to look at what occurred under those circumstances. And what occurred in the circumstances, you know, is Harris comes in and says, we want out. And the court says, there's no longer the necessity of a corporate trustee. I don't believe that the conclusion. But couldn't they just say, all right, we'll let you out. But by saying that there's no longer a necessity for a corporate trustee, doesn't that indicate that they've sort of just moved that completely off the spectrum of existing positions? Hasn't that position ceased to exist? Well, I would respectfully suggest that if the court reached that conclusion, then perhaps the order should have reflected that they've reformed the trust and eliminated the provision of the corporate successor or co-trustee. That is not included in the order, and to the best of my knowledge, certainly is not included in the record. What we have is Harris coming in and saying, we resign, and by agreement of the parties, they resign. Now, I acknowledge that there's been an extended period of time subsequently in which there has been no corporate co-trustee acting. But again, if you look at the totality of the document, and you'll note that in 84, when the court entered a reformation order, the court entered an order specifically reforming language, specifically laying out language, this is what we're changing, this is what the new clause is. That's not what happens in 82. In 82, there's no language that says, and we are deleting from the trust, the necessity that a corporate co-trustee serve in the future. All they say is, basically, Harris is allowed to resign. So they don't just say that, do they? Well, I've got the order here, Your Honor. You two aren't giving up. Sorry? I said you two are going to continue on. Oh, that's all right. I mean, nothing wrong with a little motto a motto here. Pardon me? We all respect each other, Your Honor. Yeah, there's no question about that. We're well past that. Well, what they say is that the accounts are approved. They say that the motions for summary judgment for the resignation of Harris Bank as trustee are granted, and the resignation is approved. They then go on to say Harris shall turn over the assets, and the court finds that the, as I previously indicated, that the will does not require the appointment of a successor corporate trustee. That's the sentence or the clause that I was referring to. I understand that. And I thought I responded. Okay. But if I responded inarticulately, I apologize. I've never heard you inarticulate. Thank you. I'd have to write that one down. Thank you. But then, again, I go to the 1984 order, okay, which in the 1984 order has specific language reforming the terms of Clause B of Article 4. So basically you're saying they could have reformed it in 82, they didn't, and that trumps the implication, at least, of that sentence that we're speaking about in the 82 order. Yes. That's where we are. Yes, I would agree with that statement. All right. Okay. What about, we're running out of your time here, but what about the issue of fees? Why don't you give us a couple minutes of your wisdom on that. I think that, you know, we believe that the trustees' conduct, because the document provides for a mandatory response, a mandatory compliance with the direction of the beneficiaries, we believe that the trustees' hostile response is in violation of the Hewer versus the Northern Trust case. How could we go that, you know, thinking about this issue, how could we go that way in light of the fact, forget about the rest of the case, but that the case started out that you wanted to have her removed for cause? I mean, she's supposed to lay over on that one? Roll over and play dead? No, I don't think she's supposed to roll over and play dead, but I think that there certainly could have been a scenario to bifurcate the costs involved and the fees involved. Maybe. But then when you say you don't want to have her removed, you say, well, we don't want to remove, but we want to have ATG take over all her duties. I mean, that seems, to use your word, hostile to the trustee. And isn't she really required to defend that? I think she's required perhaps to defend a removal. I don't think she's required to defend under the terms of the trust in which she's directed by the beneficiaries to appoint a substitute. But the clear intent is to basically undercut her authority to act as the trustee because you're trying to have another entity appointed to assume her powers. Wouldn't she be required to defend against that? Respectfully, I don't think so, because I've been involved in many scenarios where a change of trustee occurs peaceably and amicably. But if she was relying and placing a different interpretation on that last sentence in the 82 order than you are, isn't she required to say, well, not to acquiesce in that and to defend against that? That position no longer exists. It's been removed from the trust. I can't disagree that intellectually if the conclusion is that she relies on the nonexistence, then the answer is yes. But, you know, we've obviously reached a different conclusion in the 82 order in terms of the existence of the successor corporate trustee position. You made a comment about time, so I'm not sure where we're at. If you need a couple more, don't worry about it. I said go on. Okay. Thank you. We've also raised for your consideration the concept of a successor co-trustee, which is provided for in the 1984 reformed order. Specifically at that point, the Chancery Court reforms trust clause article 8E and states in pertinent part the court reforms the trust of the testator's will to provide for the appointment of one or more successor trustees. We believe that, you know, we've pled that alternatively and note specifically that there is a provision in the trust that provides that a corporate co-trustee or a corporate trustee basically controls the assets, controls the investments and custody of the trust corpus. I think it's worth going back, though, just for a moment to the substitute trustee issue. And I indicated earlier that we believe that Settler's intent is quite clear in allowing the beneficiaries to make this change. This predates the drafting of trusts in which today is much more common in the context of the use of what is known as a trust protector. So the provision that exists in article 8E, which allows the beneficiaries to require the trustee to appoint a substitute, is really what I'll call the trap door of what today in trust documentation is the trust protector. And, of course, the trust protector is a person generally appointed to allow the beneficiaries to change trustees and to really change course midstream. So in the late 60s when this was done, you know, that concept hadn't hit trust in a state world. And I would respectfully suggest that that's why this is contained here and that's why we believe if you read the document in its entirety, it really was the Settler's intent to allow the beneficiaries to change course here and require the appointment of a substitute trustee. If the Settler had intended the total transfer, why would he have limited the last sentence to appoint and remove substitute trustees? Rather than trustee, original trustee. Yeah. Or just trustees. I'm sorry, I'm not sure I understand the question. Well, you're taking that sentence apart. Right. And you're reading the last part of it. But you aren't reading the first part of it where the Settler actually limits. And you're saying shall comes after and expands. And I'm saying you're reading them disjunctively instead of together. Well, I think, Your Honor, in the prior portion of that sentence, it allows a trustee discretion. So it says the trustee's power to appoint and remove substitute trustees may be exercised in their discretion and shall be exercised if directed in writing by a majority in interest of the beneficiaries of the trust. See, I'm reading that to limit. You're reading it to expand. But whatever. Okay. Okay. I am reading it to expand the trustee's discretion and then limit the trustee's ability to decline when provided a mandatory direction. No, I understand what you're saying. I'm just saying when I read the whole thing together, I think, well, the whole paragraph together, to me it limits it. Okay. I understand. So I think at, you know, kind of the end of the day, and how are we doing on time? You're still going. Thank you. I think at the end of the day what the trustee is asking you to adopt is a rather tortured construction of the language. And as the Court's aware in the interpretation and construction, rules of construction relating to wills and rules of construction relating to trusts, and, of course, this is a testamentary trust created under Mr. Spencer's will, that as you read this document in its entirety, the conclusion that we have reached is the proper conclusion. Trustees Council and the lower court adopted a notion that the substitute trustee clause, Article 80, should be divided up and frankly, as your Honor indicated, read somewhat disjointedly and somewhat in a disjunctive fashion so that, for example, in their briefs they designated six separate portions or six separate powers in conjunction with that paragraph. We believe that, again, if you read this in its entirety, the conclusion is the one that we have proposed in as much as the jurisdictional limitations, as I previously mentioned, in Article 9 exist. There's a provision right on point. There's a provision relative to, again, the appointment of people outside the State of Illinois. And, you know, at the end of the day, we just don't believe that the arguments of collateral estoppel or res judicata apply to the case. The parties are not the same. The issues are not the same. And I'm confident that perhaps I should address that during my rebuttal time period. All right. Thank you. Thank you very much for your kind attention. Good morning, Your Honors. My name is Nancy Lisher and I represent the trustee. I have some answers to the questions that were raised. And I'd like to start with the substitute trustee. You maybe need to speak up a little. Oh, I'm so sorry. That's for reporting, not amplification. Oh. You have to bark a little bit at us. Okay. I'd like to start first with, if you read this trust agreement in its entirety, you see that it was absolutely clear that this settlor intended to give the trustee full discretion or absolute discretion, to use the words of the trust agreement, in making decisions about distributions. Your Honor, you had mentioned that this case did start out with trying to remove the trustee and insisting on additional distributions. Those allegations are now gone. And it cannot be contested that my client has, in fact, been complying and defending with the trust in making distributions. She's made tens of thousands of dollars for college and graduate school. She has said, I don't think daycare or pre-kindergarten tuition, which is daycare, I guess, is within the context of this trust agreement. The final direction, and a very clear direction, I think, on the part of the settlor, is that the trust is to be administered in such a way that no distribution shall be made which, in the opinion of the trustee, is detrimental to the beneficiary's own self-reliance. Getting to attorney's fees, my client has done nothing except defend this trust. There are six beneficiaries. One has sued. The three minors are named as plaintiffs. But I'd like to point out, there was never a guardian ad litem, so they're purportedly represented by their father. Then the two adult beneficiaries were named defendants, and they've chosen not to participate in this appeal. There was a mention of hostility between the trustee and everybody. That's not true. There's obviously some tension with Mr. Spencer, but the two adult, and she has no contact with the minors, obviously. But even if there were disputes, the language of the trust does allow unequal distributions, which is not always the case. True. And it also provides for no distributions whatsoever. She can just decide not to do anything. Now, she has, and this record shows, she gave him a mortgage on his house during a divorce. She gave him, I think it was $20,000 for purposes of an emergency, which I think was health-related. To get to the substitute trustee provision, all of your honors, I believe, have noted that Section 8E clearly says, the trustee's power, this is the last sentence in 8E, which power? Because there are many powers listed in this paragraph, and it's the power to want to appoint or remove. The plaintiff, as Justice Smith has pointed out, emphasizes the word shall. Shall be exercised if directed in writing. But I'd like to emphasize the trustee's power to appoint or remove shall be what? Exercised. What's exercised? The provisions gives the trustee the powers still to decide the scope or powers or discretion to be given to a substitute. Only the trustee has the power to release a substitute from liability at the end of the term. And only the trustee has the authority to accept resignation. The plaintiff's reading erases the words to appoint and remove and rewrites this sentence to say, the trustee's powers shall be exercised. And you can't rewrite a trust agreement. It's just like a statute. It's like a contract. Courts are to ascertain the intent of the set law and to give effect to the plain words of the statute. It's been argued that Article 9 applies and involves substitute trustees in other jurisdictions. And that's true. There is an extra section talking about substitute trustees. But if you read that section, it plainly only applies to property in the other jurisdiction. I would like to give a little leisure on the law of trusts with regard to what is a substitute trustee. I don't think it's like a judge. But, Your Honor, I cited some cases, pages 34 and 35 of my brief. This trust was written before the Trust Act was enacted, codified the common law. But there is some tracking of the language on what is a trustee. Although the Trust Act more closely tracks Article 9. But we still know in Article 8E, and this is what the judge said. The trial judge flagged this. I'm not sure I ever flagged it in the lower court. But he said, look, Article 8E says the trustee can appoint a bank or a trust company if and as often as the trustees deem it advantageous. And he made the analogy that while Article 9 is limited to property in other jurisdictions, but Article 8E could be, I don't know, somebody has a bad accident and needs rehabilitation. And he points, then Article 8E would give him the authority to appoint a substitute trustee for the duration or maternity leave, he said. Or presumably a temporarily occurring conflict because of a nature of some request. Or, you know, I was thinking yesterday, maybe there's something that a trustee doesn't feel capable of handling. For whatever reason, this gives very broad authority, regardless of where the property is, regardless of what it is, to actually appoint a trustee. If there are no questions on substitute trustee, I'll move on. Okay. The successor trustee really raises two questions. I don't think there's any scenario where this court could find that the uncontrovertible facts in the court files in 1982 and 1984 conclusively demonstrate that in 1982, the parties specifically litigated if there should or would be a corporate trustee. There's an issue. One of you raised the question, do we know why Harris Bank wanted to resign? And the answer is, of course we do. It said, quote, there are disputes over distribution that are presently so great, that Harris Bank cannot continue as a co-trustee of the family trust, that supplemental record C-207. We do know that Harris Bank just rolled over. And I think... You see the pox on both your houses or all your houses? Yes. I'm out of here. And my client has been adamant about complying with the trust and not rolling over to demands for pre-kindergarten tuition. The fact that it was actually litigated can't be controverted in the summary judgment motion. The question was, well, where did the property and records go? Because in the trust, it stays with the corporate trustee. The court says, well, give it to Murray, the individual trust. Then the guardian ad litem argues, no, you should have a corporate trustee. And Murray argues, no, you only need one trustee. He actually relies on Section 8D to say they mention one or two trustees. It says trustees or trustee, talking about legal title not having to pass. It would be automatic, and the books and records would go to the next trustee. You know, this court order, and as Justice Epstein, you pointed out, there's a finding of fact that Murray is the sole trustee of the family trust. It's an adjudication of a contested fact. You know, there's been some ‑‑ this court has to construe not just the trust, but it also has to construe the past orders. And in order to do that, I think you really do have to look at the court files to figure out what was the basis for doing that, which is actually what happened to me. I was faced with summary judgment. I went to look at 84, although it took a long time for the warehouse to deliver these files because it was moving. I get to the 84 files. It talks about the 82 files. Now I have to order the 82 files. So I order the 82 files, and everything comes out. We know there's an adjudication of a single trustee in 82. And in 1984, we know that everybody who's involved in 1984 was involved in 82. Everybody knew there was no corporate trustee. So in 84, the only thing they're looking at is how do you name or designate a successor trustee? Sidley said, I won't do it. So it can't be by a majority of the Sidley partners. It must be by a majority of the adult beneficiaries. 84 had nothing to do with the corporate trustee. But once there's an adjudication in 82, there's no vacancy. There's nothing to fill. Are there any questions on successor? No, we're happy. Okay. Keep moving. All right. You know, when it comes to fees, I don't think you really have to go into that argument. I think it's been kind of dissipated or it's like a stalemate. I don't think we're too hot on it. Okay. All right. I think just for these reasons, Your Honor, and the reasons stated in the brief, I would ask this Court to affirm. But I do have to say, it's not a tortured reading. This trust, as it was amended twice, is pretty clear-cut. And I would ask the Court to affirm. There's no question what this plaintiff wants to do is remove her, if not directly for cause, which he can't do, then indirectly. There's nothing in the agreements that are valid. There's nothing in the trust that permits the beneficiaries to direct the trustee to turn over all control. And that's really what they want. If there are no further questions, Your Honors. Thank you. Thank you. Mr. Peck. May it please the Court. It sounds like we're about to get into a debate of social policy and whether early childhood education. Oh, I knew when you were writing you were going to talk about this. Well, I can testify that it's expensive, even in my old age. And you probably would have benefited from it, too. Something. Hey, I graduated with 65% of my class. You were that low? Anyway. So the record indicates counsel is mute. But I think it's noteworthy. You know, trustees' counsel gets up and argues that the trustees justified in not distributing money for early childhood education. And, you know, I practice trust in a state's law, but I read the newspapers every day, as does Your Honors. Is that really what she was saying, though, Mr. Peck? Well, she clearly raised that as an issue. Well, I think she raised many, many other issues. Maybe I'm wrong. My interpretation of it was that there was a dispute between your client and the trustee about the appropriateness of issuing a distribution for that purpose, on which they just disagreed, and that that was the genesis of the conflict between your client and the trustee. And that's all I really took her comments to say, and not that, you know, even if the trustee was wrong about that, since you're no longer saying that the trustee should be removed for cause, why do we care? You make, as always, a great point. I think that at the end of the day, though, what counsel did say was that the trustee retains the discretion to appoint and remove the substitute trustee, and the trustee retains the power to basically determine the duties and powers given to a substitute trustee. I would respectfully suggest that if that is the case, it leads to the conclusion where the trustee can appoint a substitute trustee with no power and has the ability to remove that substitute trustee at their discretion. And that is what I believe counsel argued. We noted specifically in our briefs that, you know, this document appropriately could not be read to allow for appointment removal, appointment removal, or appointment with little or no power, removal, appointment removal. It could lead to nothing more than a merry-go-round. We don't believe that that's the intent of this set law. We believe that the intent of the set law was, as I indicated earlier, to give the beneficiaries what, you know, I've called oversight, but I also called a trap door to allow these beneficiaries to appoint a corporate trustee, an individual that must have trust powers under the laws in the state of Illinois. And as your honors are aware, there are very few organizations or banks and ATG and a few others that have trust powers. They have to demonstrate certain liquidity. They have to demonstrate certain ability and the like. And that's what this testator set law decedent authorized the beneficiaries to do, to put in a substitute corporate trustee. And we believe that, you know, again, if you read this document in its entirety, that our conclusion is the conclusion that an accurate reading in an effort to determine the intent of the testator, we reach the conclusion that this Court, I would respectfully ask you to reverse the lower court. And unless there's any questions, I'm prepared to sit down. Thank you. Thanks to both sides for a very well-presented argument. Very enjoyable arguments and well-written briefs. Yeah, great briefing and great to see lawyers of your caliber in a case like this. Thank you. It's very kind of all of you. Appreciate it.